THE STATE v. WAKEFIELD, *Appellant.*

1. **Perjury.** In the progress of an investigation before the grand jury to ascertain whether any member of the Board of Police Commissioners of the city of St. Louis, had received money in consideration of information furnished gamblers as to raids to be made by the police upon their establishments, the defendant testified under oath that he had never received money from one P. (a gambler) for the purpose of paying the same to any member of said board. Defendant was indicted for perjury in making this oath, the indictment charging that in truth and in fact he did receive from P. large sums of money for the purpose of paying the same to a member of said board for information when raids were to be made upon the gambling house of said P. Upon the trial the court instructed the jury that they could not find defendant guilty unless they were satisfied that P. gave defendant money with the purpose, at the time, that the same should be used for bribing a police commissioner, and that defendant knew of P.'s intention at the time he received the money. *Held,* that the defendant had no right to complain of the assignment of perjury as made in the indictment, or of the instruction. They both required the State to prove more than was necessary to make a case against defendant, viz: the purpose for which defendant was to give the money to a member of the police board.

2. ———: WHAT CONSTITUTES THE CRIME. To constitute the crime of perjury it is not necessary that a false oath taken in a judicial proceeding shall relate to the whole case. It is sufficient if it relates to a single circumstance constituting a link in the chain of evidence.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Cline, Jamison & Day* and *F. D. Turner* for appellant.

The instruction was erroneous because it assumed that the accused swore as to the purpose of Pate in paying the money, whereas he took no such oath, but simply stated that he (Wakefield) received no money from Pate for the purpose of paying it over to a member of the police board; and because the purpose or secret intention of the accused as to a future use of the money received from Pate was incapable of proof on the part of the State.

*Chas. P. Johnson and J. C. Normile* for the State. .

In place of enlarging the answer of defendant to the questions of the grand jury, the assignment narrows and restricts the receipt of the money generally to its receipt for the special and limited purpose of paying for information of raids.   The questions in their logical order were, did he receive the money from Pate, and if so, was it for a commissioner, and for what purpose.   If he swears he never got money from Pate at all, then of course he did not get it to give to a commissioner, and if true, that would end the inqiury.   But it will, perhaps, be argued that merely denying the receipt of money from Pate, disconnected with the police board and information of contemplated raids is not material.   " The false swearing to matter which, however valueless and ineffective ultimately, has yet some *prima facie,* though illusory weight, is perjury." (2 Wharton's Crim. Law, (8 Ed.) § 1282 ;) and the same author says, (§ 1303 :)   " The assignment of perjury may, in some instances, be more full than the statement of the defendant which it is intended to contradict."   3 Russ. on Cr., (8 Ed.) p. 70, § 72 ; *Commonwealth v. Smith,* 11 Allen 250.

HENRY, J.—In the opinion delivered by the court of appeals, affirming the judgment of the criminal court in this cause, all the questions of any importance presented by this record are considered, and we deem it unnecessary to deliver a lengthy opinion on subjects which have been so ably discussed in that opinion, inasmuch as we fully concur in its arguments and conclusions.*   On one question, the earnestness and zeal of appellant's counsel have induced us to add a few remarks.

The evidence given by Wakefield before the grand jury, upon which the charge of perjury was predicated,

*See 9 Mo. App. Rep. 326.

1. PERJURY.     was as follows : " I (meaning said Alonson B. Wakefield) never received any money or property from Robert C. Pate, or any other person in the city of St. Louis, as a consideration for information given to said Robert C. Pate, or other persons in the city of St. Louis, of the time when raids were to be made by members of the Metropolitan Police force of the city of St. Louis upon the gambling house of said Robert C. Pate, or other gambling houses in said city of St. Louis. Nor did I (meaning said Alonson B. Wakefield) ever receive or collect any money from Robert C. Pate, or any other person in the gambling business, for the purpose of paying the same to any member of the Board of Police Commissioners of the city of St. Louis. I (meaning the said Alonson B. Wakefield) never had an opportunity of rendering any service of that kind—of notifying Robert C. Pate of raids on his (said Pate's) gambling house. Said Pate paid me money, some months several hundred dollars, for advice and attorney's fees. I (meaning the said Alonson B. Wakefield) never did make or convey any communication to said Robert C. Pate, or any person in his (said Pate's) employ, by word or sign, or in any manner communicate, or cause to be communicated to him (said Pate) information of the time when raids would or were expected to be made."

And one of the assignments in the indictment is as follows : " Whereas, in truth and in fact, the said Alonson B. Wakefield did collect and receive from said Robert C. Pate a large sum or sums of money (the number, amount or further description is unknown to the grand jurors) for the purpose of paying the same to a member of the Board of Police Commissioners for information when raids were or would be made upon the gambling·house of said Robert C. Pate, and other persons to the grand jurors unknown."

The following instructions were given in behalf of the State : "You ought not to convict the defendant unless you believe and find that the falsity of the statement upon which, by the indictment, under these instructions the

charge against him is based, has been to your satisfaction fully established, either by the testimony of more than one credible witness, or by that of one such witness corrobor- ated by other evidence in the cause, which convinces your minds of the truth of the testimony of such single witness to the fact, and of the falsity of the statement; and not then, unless you further find from the evidence the exis- tence of all the other elements of the offense, and of the facts necessary to authorize his conviction, as such other elements and facts are hereinbefore fully set forth. In other words, before you can find the defendant guilty under the indictment, it devolves upon the State to prove to your satisfaction by the testimony of two credible witnesses, or one credible witness and corroborating circumstance proven by other credible witnesses in the cause, beyond a reasona- ble doubt, that R. C. Pate within three years next before the second Monday in March, 1879, gave defendant money with the purpose, at the time, that the same should be used for bribing a Police Commissioner, and that Wakefield knew, at the time he so received the same, of the felonious intention of Pate to bribe."

It is contended by defendant's counsel that the latter sentence of the instruction was "not only calculated to mislead the jury, but carried them outside of the oath charged in the indictment, and authorized a conviction on an oath never taken by the accused." The oath was, that he had never received or collected any money from Pate or any other person engaged in the business of gambling for the purpose of paying the same to any member of the Board of Police Commissioners. The instruction required the jury to find not only that Pate had given money to Wakefield to be paid to a member or members of the Police Board, but that it was Pate's purpose at the time that it should be used to bribe a Police Commissioner, and that Wakefield, when he received it, knew that it was given for that purpose by Pate. If, after stating in the indictment the evidence given by Wakefield, to the effect

that he had never received any money from Pate for the purpose of paying the same to any member of the Police Board, the assignment, instead of that made, had been simply that defendant had received money from Pate for the purpose of paying the same to a Police Commissioner, it would have been sufficient, and if the instruction complained of had been given at the instance of the defendant, the State might well have objected, because it required her to prove more than was necessary to establish the charge. The fact, if true, that Wakefield had received money from Pate to be paid to a Police Commissioner, would constitute a link in the chain of circumstances tending to establish the guilt of such commissioner of the charge the jury was investigating, and if his testimony in every other respect was true and only false in this, he was as guilty as if his testimony was false in every particular. The assignment, while in form narrower, was in substance broader than necessary, alleging more than it devolved upon the State to prove, and to this extent was immaterial. *Commonwealth v. Smith*, 11 Allen 243, cited in the opinion delivered by the court of appeals, is directly in point.

It is contended that the substance of Wakefield's testimony was that he had never received money from Pate with a purpose or intent on his part to deliver it to any of the Police Commissioners. The grand jury was not investigating any charge against Wakefield, but was endeavoring to ascertain whether any Police Commissioner had been guilty of receiving a bribe, etc., and it was important and material in that investigation to learn if any one engaged in the gambling business had given any person money to be delivered to them or any of them. What Wakefield's secret, undivulged intention was with regard to the money, if any, received by him of Pate, was not the subject of the inquiry made of him. The fact they desired to know was whether Pate had given him money which Pate intended him to pay to a commissioner. If he gave Wakefield money for that purpose, and such purpose of

Pate was known to Wakefield, is Wakefield's testimony consistent with that fact? Can he escape on the ground that there was at that time an undisclosed purpose on his part to keep the money for himself and not dispose of it as directed? Is justice to be trifled with and thwarted in that manner? Did he understand the interrogatory or investigation to relate to *his intention* or to the *purpose for which Pate gave him the money?* Certainly the latter was the clear import of the question, and the only reasonable or allowable construction of his evidence on that point, taken in connection with the investigation to which it related, was that he had received no money from Pate which the latter intended him to pay to a Police Commissioner.

So far as this prosecution for perjury is concerned, it does not matter whether the Police Commissioner or Com-

2. ——: what con-
stitutes the crime.

missioners were guilty or not. The failure to indict them, or one of them, might possibly have been owing to the perjury herein alleged. If one falsely swears on a trial of A for murder that he saw him shoot the deceased, he is guilty of perjury, although, in fact, A was guilty and was convicted of the murder. So, if he had been acquitted, the witness who thus falsely testified would be none the less guilty of perjury. The guilt of one falsely swearing does not depend upon the result of the proceeding in which it occurred ; therefore, whether all the links in the chain of circumstantial evidence necessary to its completion are supplied or not, a witness who has sworn falsely in regard to any link is as guilty as if the evidence fully supplied that and all the other parts. A criminal charge is proved step by step. The jury was not restricted to Wakefield's testimony to ascertain what he did or what he intended to do with the money, even if that intention on his part had been material. They may have thought that those facts could be more satisfactorily established by other evidence. What his intention was when he received the money, might never have been of any im-

portance in the matter the jury was investigating.   The judgment is affirmed.   All concur.